# United States Court of Appeals for the Federal Circuit

———————————

**INTERVAL LICENSING LLC,**
*Plaintiff-Appellant,*

**v.**

**AOL, INC.,**
*Defendant-Appellee,*

AND

**APPLE, INC.,**
*Defendant-Appellee,*

AND

**GOOGLE, INC.,**
*Defendant-Appellee,*

AND

**YAHOO! INC.,**
*Defendant-Appellee.*

———————————

2013-1282, -1283, -1284, -1285

———————————

Appeals from the United States District Court for the Western District of Washington in Nos. 13-CV-0263, 13-CV-0264, 13-CV-0265 and 13-CV-0266, Judge Marsha J. Pechman.

———————————

Decided:  September 10, 2014

———————————

THOMAS C. GOLDSTEIN, Goldstein & Russell, PC, of Washington, DC, argued for plaintiff-appellant.  Of counsel on the brief were MICHAEL HEIM, NATHAN J. DAVIS, and DOUGLAS R. WILSON, Heim, Payne & Chorush LLP, of Houston, Texas; JUSTIN A. NELSON, Susman Godfrey L.L.P., of Seattle, Washington, and MAX L. TRIBBLE, JR., of Houston, Texas.

J. MICHAEL JAKES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, of Washington, DC, argued for all defendants-appellees.  With him on the brief were GERALD F. IVEY, CORTNEY S. ALEXANDER, ROBERT L. BURNS, II, and ERIK R. PUKNYS, for AOL Inc.; ELIZABETH DAY, DAVID ALBERTI, and MARC C. BELLOLI, Feinberg Day Alberti & Thompson LLP, of Menlo Park, California, and BRIAN BERLINER, O'Melveny & Myers, LLP, of Los Angeles, California, for Apple Inc.; WARREN S. HEIT, CARMEN LO, and WENDI R. SCHEPLER, White & Case LLP, of Palo Alto, California, and KEVIN MCGANN and DIMITRIOS T. DRIVAS, of New York, New York, for Google Inc.; and DEANNE MAYNARD, Morrison & Foerster LLP, of Washington, DC, and MICHAEL A. JACOBS and MATTHEW I. KREEGER, of San Francisco, California, for Yahoo! Inc.

———————————

Before TARANTO and CHEN, *Circuit Judges.*[*]

———————————

[*]    Randall R. Rader, who retired from the position of Circuit Judge on June 30, 2014, did not participate in this decision.

CHEN, *Circuit Judge.*

Interval Licensing LLC ("Interval") appeals from four stipulated final judgment orders of the United States District Court for the Western District of Washington.[1] Each order granted:  (1) final judgment of invalidity of claims 4–8, 11, 34, and 35 of U.S. Patent 6,034,652 ("the '652 patent") and claims 1–4 and 7–15 of U.S. Patent 6,788,314 ("the '314 patent"), based on the court's determination that those claims are indefinite; and (2) final judgment of non-infringement of claims 15–18 of the '652 patent, based on the court's claim construction of the phrase "during operation of an attention manager."  While we agree with the court's indefiniteness determination, we do not agree with the court's construction of "attention manager" and thus modify that construction.  Additionally, we modify the court's construction of the term "instructions."  For the reasons set forth below, we affirm the judgments of invalidity, vacate the judgments of non-infringement, and remand for further proceedings.

BACKGROUND

The '652 and '314 patents are directed to an "attention manager for occupying the peripheral attention of a person in the vicinity of a display device."  The patents, which share a common specification, describe a system that acquires data from a content provider, schedules the display of the content data, generates images from the content data, and then displays the images on a device.

---

[1]    Interval sued the four appellees for infringement in the district court.  Due to complicated procedural reasons not relevant here, the court severed all of the claims and counterclaims into four cases, issuing separate final judgment orders of invalidity and non-infringement for each case.  Interval appealed each order, and the four appeals were consolidated into the present appeal.

The patents explain that the term "image" is used "broadly here to mean any sensory stimulus that is produced from the set of content data, including, for example, visual imagery (e.g., moving or still pictures, text, or numerical information) and audio imagery (i.e., sounds)." '652 patent, 6:60–64. The content data presented in the images are "virtually limitless," and may include advertisements, video nature scenes, and radio talk shows. *Id.* at 7:26–38. As for the users of the attention manager, the patents contemplate that the system will typically occupy the attention of human users, but may also be used to occupy the attention of dogs, cats, and parrots. *See id.* at 29:32–40. The primary issues raised on appeal center on the manner in which the patented invention displays content data—specifically, how the attention manager displays "images" so as to attract the peripheral attention of the user.

To engage the "peripheral attention" of a user in "the vicinity of a display device," the attention manager "[g]enerally . . . makes use of 'unused capacity' of the display device." *Id.* at 2:3–9. The specification discloses two primary approaches to utilizing "unused capacity." First, the specification describes a "screen saver embodiment" that displays images "automatically after detection of an idle period" or after activation of the screen saver by the user. *Id.* at 3:19–22, 9:24–36. The patents use screen savers—typically used for preventing screen burnout and for "aesthetic or entertainment value"—for the purpose of "display[ing] content from a remote location via a computer network." *Id.* at 1:39–67. The screen saver embodiment may be employed "while a primary interaction is ongoing, but during inactive periods (i.e., when the user is not engaged in an intensive interaction with the apparatus)." *Id.* at 6:35–38.

Second, the specification describes a wallpaper embodiment. "Wallpaper," the specification explains, is "a pattern generated in the background portions on a com-

puter display screen." *Id.* at 1:51–52. The patents' "wallpaper embodiment" displays images "while the user is engaged in a primary interaction with the apparatus, which primary interaction can result in the display of an image or images in addition to the image or images generated from the set of content data." *Id.* at 3:25–31. The wallpaper embodiment makes use of the "unused" spatial capacity of a screen, displaying information in areas not used by the user's primary interaction. *Id.* at 6:38–51.

On August 27, 2010, Interval sued AOL Inc., Apple Inc., Google Inc., and Yahoo! Inc. (the "Defendants") in the Western District of Washington, alleging infringement of four patents, including the '652 and '314 patents. Interval's suit alleged that the Defendants infringe the patents through products and software that use "pop-up" notifications to present information to users. In early 2011, two of the Defendants filed a request for ex parte reexamination of the '652 patent, while another defendant filed a request for inter partes reexamination of the '314 patent. The district court stayed the litigation pending the USPTO's reexaminations. Examiners found the asserted claims of both patents to be patentable in view of the cited prior art.[2] The district court then lifted the stay with respect to the '652 and '314 patents, proceeding to claim construction.

Of the twenty-five claims Interval asserted in the '652 and '314 patents, all but four contain or depend on the

---

[2]    After the present appeal was argued, the Patent Trial and Appeal Board reversed the examiner's decision of the inter partes reexamination of the '314 patent. The Board rejected all of the asserted claims of the '314 patent as obvious, anticipated, or both. *See Apple, Inc. v. Interval Licensing LLC*, No. 2013-005424, 2014 WL 1322685, at *16 (Patent Tr. & App. Bd. Apr. 1, 2014). Interval has indicated that it intends to appeal the Board's decision.

phrase "in an unobtrusive manner that does not distract a user."  Claim 1 of the '314 patent is representative:

A method for engaging the peripheral attention of a person in the vicinity of a display device, comprising the steps of:

providing one or more sets of content data to a content display system associated with the display device and located entirely in the same physical location as the display device;

providing to the content display system a set of instructions for enabling the content display system to selectively display, **in an unobtrusive manner that does not distract a user of the display device or an apparatus associated with the display device from a primary interaction with the display device or apparatus**, an image **or images generated from a set of content data**; and

auditing the display of sets of content data by the content display system;

wherein the one or more sets of content data are selected from a plurality of sets of content data, each set being provided by an associated content provider, wherein each associated content provider is located in a different physical location than at least one other content provider and each content provider provides its content data to the content display system independently of each other content provider and without the content data being aggregated at a common physical location remote from the content display system prior to being provided to the content display system, and wherein for each set the

> respective content provider may provide scheduling instructions tailored to the set of content data to control at least one of the duration, sequencing, and timing of the display of said image or images generated from the set of content data.

'314 patent, 29:53–30:18 (emphasis added).

Although all of the asserted claims in the '314 patent depend on the "unobtrusive manner" language, four of the asserted claims in the '652 patent do not. Representative claim 15 recites:

> A computer readable medium encoded with one or more computer programs for enabling acquisition of a set of content data and display of an image or images generated from the set of content data on a display device **during operation of an attention manager**, comprising:
>
> acquisition instructions for enabling acquisition of a set of content data from a specified information source;
>
> user interface installation instructions for enabling provision of a user interface that allows a person to request the set of content data from the specified information source;
>
> content data scheduling instructions for providing temporal constraints on the display of the image or images generated from the set of content data, wherein the content data scheduling instructions further comprise sequencing instructions that specify an order in which the images generated from a set of content data are displayed; and

> display instructions for enabling display of the
> image or images generated from the set of
> content data.

'652 patent, 32:37–58 (emphasis added).

In its claim construction order, the district court found that "the terms 'in an unobtrusive manner' and 'does not distract' a user, whether used together or separately,"[3] are indefinite. *Interval Licensing, LLC v. AOL, Inc.*, C10-1385MJP, 2013 WL 792791, at *3 (W.D. Wash. Feb. 28, 2013). After reviewing the claim language, the written description, and the prosecution history, the district court offered two primary reasons for holding the claim language indefinite: (1) "because the patents fail to provide an objective standard by which to define the scope of [the 'unobtrusive manner' phrase]"; and (2) "because the determination of whether an accused product would meet the claim limitations depends on its usage in changing circumstances." *Id.* at *5.

The district court also construed several disputed claim terms. Relevant here, the court construed the term "attention manager" as limited to the specific screensaver and wallpaper embodiments. *See id.* at *10–11 (adopting Defendants' construction of "a system that displays images to a user either when the program detects that the user is not engaged in a primary interaction or as a background of the computer screen"). The court also adopted

---

[3] As Interval observes, much of the district court's indefiniteness analysis treats "unobtrusive manner" and "does not distract a user" as distinct claim limitations. Interval argues that "[b]ecause the phrase is used as a whole repeatedly throughout the specification and claims . . . all of the words of the phrase should be construed together." Appellant's Br. 28 n.5. We agree and evaluate the phrase accordingly in this opinion.

the Defendants' construction of "instructions," a term which appears in many of the asserted claims. *See id.* at *15–16 (construing "instructions" as "a statement in a programming language that specifies a function to be performed by a system").

Based on the claim construction order, the parties stipulated that twenty-one claims in both patents were invalid as indefinite, and that claims 15–18 of the '652 patent were not infringed by the Defendants. On February 18, 2013, the district court issued final judgment orders to that effect, which Interval timely appeals. Interval asks us to reverse the district court's holding that the claim phrase "in an unobtrusive manner that does not distract a user" is indefinite,[4] vacate the court's construction of "attention manager," and clarify the court's construction of "instructions."

---

[4]    The district court separately addressed independent claim 4 of the '652 patent, which uses the "unobtrusive manner" phrase in a means-plus-function limitation. *See* '652 patent, 30:29–33 (claiming a "means for selectively displaying on the display device, in an unobtrusive manner that does not distract a user"). The court held that claim 4 and its dependent claims were indefinite because the specification does not disclose an algorithm that would constitute sufficient structure for accomplishing the recited function. *Interval*, 2013 WL 792791, at *9. Interval asks us to reverse that holding. However, because we affirm the district court's determination that the "in an unobtrusive manner that does not distract a user" phrase is indefinite under 35 U.S.C. § 112, ¶ 2 for the reasons stated in this opinion, we find it unnecessary to address the district court's additional determination that the means-plus-function claims are indefinite due to a lack of corresponding structure in the specification.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I. Indefiniteness

A patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as [the] invention." 35 U.S.C. § 112, ¶ 2 (2006).[5]  A claim fails to satisfy this statutory requirement and is thus invalid for indefiniteness if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).  We review the district court's indefiniteness determination here de novo.  *See Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1365 (Fed. Cir. 2011); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1344 (Fed. Cir. 2007).[6]

---

[5]  Paragraph 2 of 35 U.S.C. § 112 was replaced with newly designated § 112(b) when § 4(c) of the America Invents Act ("AIA"), Pub. L. No. 112-29, took effect on September 16, 2012.  Because the applications resulting in the patents at issue in this case were filed before that date, we will refer to the pre-AIA version of § 112.

[6]  We note that the district court's indefiniteness determination rests only on intrinsic evidence, and that there are no disputes about underlying questions of fact.  Although the Defendants point to the testimony of Interval's expert in support of their argument that the "unobtrusive manner" phrase is indefinite, *see* Appellee's Br. 32, we find it unnecessary to rely on that testimony (or any other extrinsic evidence) to reach our conclusion.  Like the district court, we find the claims indefinite based on the

A

After the present appeal was argued, the Supreme Court issued its opinion in *Nautilus, Inc. v. Biosig Instruments, Inc.*, which addressed our use of the expressions "insolubly ambiguous" and "amenable to construction" in applying § 112, ¶ 2. The Court explained that the statute's definiteness requirement calls for a "delicate balance." *Nautilus*, 134 S. Ct. at 2128 (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002)). The definiteness standard "must allow for a modicum of uncertainty" to provide incentives for innovation, but must also require "clear notice of what is claimed, thereby appris[ing] the public of what is still open to them." *Id.* at 1228, 1229 (internal citations omitted). In light of that balance, the Court characterized our "insolubly ambiguous" and "amenable to construction" expressions as "more amorphous than the statutory definiteness requirement allows." *Id.* at 2131. What the statute requires, the Court clarified, "is that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Id.* at 2129.

The key claim language at issue in this appeal includes a term of degree ("unobtrusive manner"). We do not understand the Supreme Court to have implied in *Nautilus*, and we do not hold today, that terms of degree are inherently indefinite. Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention. *See, e.g.*, *Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 65–66 (1923) (finding "substantial pitch" sufficiently

_____

claims, the written description, and the prosecution history.

definite because one skilled in the art "had no difficulty . . . in determining what was the substantial pitch needed" to practice the invention). As the Supreme Court recognized in *Nautilus*, "absolute precision" in claim language is "unattainable." 134 S. Ct. at 2129; *see also Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010) (holding that the claim phrase "not interfering substantially" was not indefinite even though the construction "define[d] the term without reference to a precise numerical measurement"); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement.").

Although absolute or mathematical precision is not required, it is not enough, as some of the language in our prior cases may have suggested, to identify "*some standard* for measuring the scope of the phrase." *See* Appellant's Br. 31 (quoting *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005)). The Supreme Court explained that a patent does not satisfy the definiteness requirement of § 112 merely because "a court can ascribe *some* meaning to a patent's claims." *Nautilus*, 134 S. Ct. at 2130. The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art. *See id.* at 2130 & n.8 (indicating that there is an indefiniteness problem if the claim language "might mean several different things and 'no informed and confident choice is available among the contending definitions'" (quoting *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, __ F. Supp. 2d __, 2014 WL 869092, at *4 (M.D. Fla. Mar. 5, 2014)); *see also Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("The fact that [the patent holder] can articulate a definition supported by the specification . . . does not end the inquiry. Even if a claim term's definition can be reduced to words,

the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").

B

The patents' "unobtrusive manner" phrase is highly subjective and, on its face, provides little guidance to one of skill in the art. Although the patented invention is a system that displays content, the claim language offers no objective indication of the manner in which content images are to be displayed to the user. As the district court observed, "whether something distracts a user from his primary interaction depends on the preferences of the particular user and the circumstances under which any single user interacts with the display." *Interval*, 2013 WL 792791, at *4. The lack of objective boundaries in the claim language is particularly troubling in light of the patents' command to read "the term 'image' . . . broadly to mean any sensory stimulus that is produced from the set of content data," including sounds and video. '652 patent, 6:60–64. The patents contemplate a variety of stimuli that could impact different users in different ways. As we have explained, a term of degree fails to provide sufficient notice of its scope if it depends "on the unpredictable vagaries of any one person's opinion." *Datamize,* 417 F.3d at 1350.

Where, as here, we are faced with a "purely subjective" claim phrase, we must look to the written description for guidance. *Id.* at 1351; *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005). We find, however, that sufficient guidance is lacking in the written description of the asserted patents.

i

Interval contends that the "unobtrusive manner" phrase is sufficiently defined through its relationship to one of the two primary embodiments. The phrase, Inter-

val maintains, is tied exclusively to the wallpaper embod-
iment, thus informing those of skill in the art that "unob-
trusive" has only a spatial meaning in the context of the
patents. "Because the district court failed to appreciate
that the language describing display 'in an unobtrusive
manner that does not distract a user' is tied to specific
type of display described in the specification," Interval
argues, the district court "improperly divorced its analysis
from the context of the written description and incorrectly
focused on irrelevant hypotheticals . . . ." Appellant's Br.
23.

We do not agree with Interval that it is reasonably
clear that the "unobtrusive manner" language is tied to a
specific type of display. Although Interval identifies
portions of the specification that appear to use the "unob-
trusive manner" phrase in conjunction with the wallpaper
embodiment, *see* '652 patent, 2:12–19, 13:11–14, other
portions of the specification suggest that the phrase may
also be tied to the screen saver embodiment.

> According to one aspect of the invention, an atten-
> tion manager engages the peripheral attention of
> a person in the vicinity of a display device of an
> apparatus by acquiring one or more sets of con-
> tent data from a content providing system and se-
> lectively displaying on the display device, **in an
> unobtrusive manner that does not distract a
> user of the apparatus from a primary inter-
> action with the apparatus**, an image or images
> generated from the set of content data. **Accord-
> ing to a further aspect of the invention, the
> selective display of the image or images be-
> gins automatically after detection of an idle
> period of predetermined duration (the
> "screen saver embodiment")**. This aspect can
> be implemented, for example, using the screen
> saver API (application program interface) that is
> part of many operating systems. **According to**

**another further aspect of the invention, the selective display of an image or images occurs while the user is engaged in a primary interaction with the apparatus, which primary interaction can result in the display of an image or images in addition to the image or images generated from the set of content data (the "wallpaper embodiment").**

*Id.* at 3:11–31 (emphases added).

The specification here suggests that possibly both the screen saver and wallpaper embodiments are "further aspects" of an attention manager that displays content "in an unobtrusive manner that does not distract a user of the apparatus from a primary interaction with the apparatus." Although Interval disputes this reading, we find that the specification is at best muddled, leaving one unsure of whether the "unobtrusive manner" phrase has temporal dimensions as well as spatial dimensions. The hazy relationship between the claims and the written description fails to provide the clarity that the subjective claim language needs. *See Datamize,* 417 F.3d at 1352 (holding claim term "aesthetically pleasing" indefinite because, even though the preferred embodiment provided "examples of aesthetic features of screen displays that can be controlled by the authoring system," the specification did not indicate "what selection of these features would be 'aesthetically pleasing'"); *In re Hammack*, 427 F.2d 1378, 1381–82 (C.C.P.A. 1970) (finding claims invalid for indefiniteness where claims "serv[ed] as a shadowy framework upon which are located words lacking in precise referents in the specification" (internal quotations omitted)).

The prosecution history further illustrates the difficulty in pinning down the relationship between the written description and the "in an unobtrusive manner that does not distract the user" claim phrase. The statements of Interval, and the responses of the USPTO, reflect

considerable uncertainty about which embodiments were tied to the "unobtrusive manner" language. During prosecution in 1998, Interval relied on a different reading than the one it offers now, stating that "[t]he display of images in an unobtrusive manner in a system as recited in Claim 1 can be implemented by, for example, displaying images during an inactive period (e.g., when the user has not interacted with the apparatus for a predetermined period of time) of a primary interaction with the apparatus (the 'screensaver embodiment')." J.A. 985. Interval points out, however, that the examiner appeared not to share Interval's initial understanding: later in the prosecution, the examiner discussed the "unobtrusive manner" limitation in conjunction with the wallpaper embodiment but not the screen saver embodiment. J.A. 1073.

The USPTO expressed a similar understanding during reexaminations of the '652 and '314 patents, with examiners finding that the specification links the "unobtrusive manner" language to the wallpaper embodiment, excluding the screensaver embodiment. *See* J.A. 1090–91, 1311. But in a recent decision addressing the scope and validity of the '314 patent, the Patent Trial and Appeal Board disagreed with the examiner. *Apple, Inc. v. Interval Licensing LLC*, No. 2013-005424, 2014 WL 1322685 (Patent Tr. & App. Bd. Apr. 1, 2014).[7] The Board con-

---

[7]    The Board's decision was a response to an appeal from an inter partes reexamination. Per 37 C.F.R. § 1.906, the Board was limited to the question of whether the challenged claims should be rejected on the basis of prior art patents or printed publications. Neither the examiner nor the Board could address claim definiteness. The claims were given "their broadest reasonable construction" during reexamination. *In re Am. Acad. Of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).

cluded that, in light of "the ambiguous nature" of the specification, "the claim term 'unobtrusive manner' includes the screensaver embodiment." *Id.* at *7.[8]

After reviewing the specification and prosecution history, we find that the "unobtrusive manner" phrase has too uncertain a relationship to the patents' embodiments. Contrary to Interval's suggestion, the wallpaper embodiment does not provide a reasonably clear and exclusive definition, leaving the facially subjective claim language without an objective boundary.

ii

In the alternative, Interval suggests that if we are not persuaded that the wallpaper embodiment defines the "unobtrusive manner" phrase, then we must at least adopt a "narrow example" from the specification. That example lies in the Summary of the Invention, which explains that information can be presented "in an unobtrusive manner that does not distract the user from the primary interaction with the apparatus (*e.g., the information is presented in areas of a display screen that are not used by displayed information associated with the primary interaction with the apparatus*)." '652 patent, 2:15–19 (emphasis added).

We recognize that a patent which defines a claim phrase through examples may satisfy the definiteness requirement. *See, e.g., Enzo Biochem*, 599 F.3d at 1336

---

[8]    At the hearing before the Board, counsel for Interval acknowledged the lack of clarity in column 3 of the specification: "I would say in this summary location within the specification [the drafters] were a little bit less precise, a little bit sloppy here . . . it might seem less precise or even possibly contradictory. . . . My point is simply that at best it's ambiguous." *Id.* at *6 (internal citations omitted).

(holding that "not interfering substantially" is sufficiently definite because one of skill in the art could use "the examples in the specification to determine whether interference with hybridization is substantial"). In this case, however, we decline to cull out a single "e.g." phrase from a lengthy written description to serve as the exclusive definition of a facially subjective claim term. *See Nautilus*, 134 S. Ct. at 2130 (disfavoring "post hoc" efforts to "ascribe *some* meaning to a patent's claims").

Had the phrase been cast as a definition instead of as an example—if the phrase had been preceded by "i.e." instead of "e.g."—then it would help provide the clarity that the specification lacks. But as the specification is written, we agree with the district court that a person of ordinary skill in the art would not understand the "e.g." phrase to constitute an exclusive definition of "unobtrusive manner that does not distract a user." *See Interval*, 2013 WL 792791, at *4. With this lone example, a skilled artisan is still left to wonder what other forms of display are unobtrusive and non-distracting. What if a displayed image takes up 20% of the screen space occupied by the primary application with which the user is interacting? Is the image unobtrusive? The specification offers no indication, thus leaving the skilled artisan to consult the "unpredictable vagaries of any one person's opinion." *See Datamize*, 417 F.3d at 1350. Such ambiguity falls within "the innovation-discouraging 'zone of uncertainty' against which [the Supreme Court] has warned." *Nautilus*, 134 S. Ct. at 2130 (internal citation omitted).

In sum, the "unobtrusive manner that does not distract a user" phrase, when viewed in light of the specification and prosecution history, fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *See id.* at 2129. The claims that depend on that phrase are thus invalid for indefiniteness.

## II.  Claim Construction

We review claim construction de novo.  *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276–77 (Fed. Cir. 2014) (en banc); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc).  The words of a claim "are generally given their ordinary and customary meaning," which is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc) (internal citations omitted).  Claim language must be viewed in light of the specification, which is "the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  In addition to consulting the specification, we may also consider the prosecution history and any relevant extrinsic evidence.  *Id.* at 1315–17.

### A.  Construction of "Attention Manager"

As discussed in the Background, *supra*, the phrase "attention manager" appears in claims 15–18 of the '652 patent.  In its claim construction order, the district court adopted the Defendants' proposed construction: "a system that displays images to a user either when the program detects that the user is not engaged in a primary interaction or as a background of the computer screen." *Interval*, 2013 WL 792791, at *11.  The court explained that it relied on "the only description in the specification that gives objective boundaries to the scope of this limitation: the 'screensaver' and 'wallpaper' embodiments." *Id.*

In contrast to the "in an unobtrusive manner that does not distract a user" phrase, there is no uncertainty about the definitional relationship between the claim term "attention manager" and the written description. The patented invention is a self-coined "attention manager."  No one disputes that the "attention manager" is

defined by all of the disclosed embodiments. What is in dispute, and what we must consider in reviewing the construction of "attention manager," is whether the district court read the embodiments too narrowly and thus improperly limited the scope of the claim term.

Interval proposes modifying the claim construction as follows:

> a system that displays images to a user either when ~~the program detects that~~ the user is not engaged in a primary interaction or as ~~a background of the computer screen~~ **an area of the display screen that is not substantially used by the user's primary activity**.

*See* Appellant's Br. 53.

With regard to the first proposed modification—the removal of "the program detects that" phrase—Interval argues that the district court mistakenly limited the screen saver to a single mode of operation. Interval notes that the specification describes two ways of activating the screen saver: (1) through the detection of an idle period or, alternatively, (2) through direct user activation. *See* '652 patent, 9:21–36. In response, the Defendants suggest that the system still "detects" user activation even in the alternative embodiment, and that the district court's inclusion of "detects" is thus consistent with the patents' description of the screen saver. Although the Defendants' reading is plausible, we think that Interval's reading better conforms to the distinction drawn between "detection" and "user-activation" in the written description. We therefore agree with Interval that the phrase "the program detects that" should be removed from the construction.

With regard to the second proposed modification—the replacement of "a background of the computer screen" with "as an area of the display screen that is not substan-

tially used by the user's primary activity"—Interval argues that its change is faithful to a "lexicographical definition" in the specification of the '652 patent. Appellant's Br. 53 (citing *Phillips*, 415 F.3d at 1321). Interval faults the district court for basing its construction on a general definition of "wallpaper" in the specification. *See* '652 patent, 1:50–52 (describing wallpaper as "a pattern generated in the background portions on a computer display"). Instead, Interval urges, the construction should be based on an express definition of "wallpaper embodiment":

> According to another further aspect of the invention, the selective display of an image or images occurs while the user is engaged in a primary interaction with the apparatus, which primary interaction can result in the display of an image or images in addition to the image or images generated from the set of content data (the "wallpaper embodiment").

*Id.* at 3:25–31.

We agree with Interval that the wallpaper embodiment of the attention manager should not be strictly limited to the "background" of a computer screen, and we agree that the specification's description of the embodiment should inform our construction. The district court's construction suggests that displayed images must be integrated into the background display, similar to the "patterns" of the traditional wallpaper described in the background of the invention. *See id.* at 1:50–52. But the patents' description of the wallpaper embodiment supports a broader reading. The patent describes the embodiment as making use of unused spatial capacity—that is, space in the display not used by the user's primary interaction. *See id.* at 3:25–31, 6:45–51. The specification does not indicate that the images must be displayed as part of the background of the display device.

We note, however, that Interval's proposed modification ("an area of the display screen that is not substantially used by the user's primary activity") is not taken directly from the cited "lexicography." Rather, the proposed language appears to be Interval's interpretation of where the images will be displayed while the user is engaged in a primary interaction. Based on our reading of the specification, the attention manager is better construed as displaying images in areas "not used"—instead of "not *substantially* used"—by the user's primary activity. The specification consistently describes how the attention manager makes use of "unused capacity." Moreover, the specification twice contrasts a user's "primary interaction with the apparatus" with the display of information in areas "not used" by the information associated with the primary interaction. *See id.* at 2:15–19, 6:43–45. The phrase "not substantially used," by contrast, appears nowhere in the specification.

In sum, with the exception of the addition of the word "substantially," we agree with Interval's proposed construction of "attention manager." Accordingly, we adopt the following construction: "a system that displays images to a user either when the user is not engaged in a primary interaction or in an area of the display screen that is not used by the user's primary activity."

## B. Construction of "Instructions"

The district court construed "instructions" as "a statement in a programming language that specifies a function to be performed by a system." *Interval*, 2013 WL 792791, at *15–16. Although the district court's construction of "instructions" was not dispositive with respect to the final judgment of invalidity and non-infringement, Interval asks us to review that construction now. Specifically, Interval asks us to clarify that "instructions," in the context of the patents, "may encompass 'data'" and "need

not be written 'in a programming language.'" Appellant's Br. 61–62.

In the interest of judicial economy, we have the discretion to review a non-dispositive claim construction if we believe that the construction may become important on remand. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1357 (Fed. Cir. 2012); *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1378 (Fed. Cir. 2011). Because we are vacating the judgment of non-infringement as to claims 15–18 of the '652 patent, and because those claims include the term "instructions," we take this opportunity to address the claim construction of that term.

During claim construction, Interval argued that "instructions" should be construed to cover "data related to the accomplishment of a function." J.A. 27. Relying principally on the distinction between "instructions" and "data" in the specification, the district court refused to adopt Interval's construction. *See Interval*, 2013 WL 792791, at *15–16. We share the district court's reading.

Interval notes that the specification refers to certain "instructions" as "functional components," '652 patent, 14:49–53, which may be represented by "data." *Id.* at 14:53–57 ("Each of the functional components are represented by a set of instructions and/or data. In particular, each of the instructions may include, if appropriate, data related to accomplishment of the functions associated with the set of instructions . . . ."). Although Interval reads the cited portion of the specification as showing that data alone can constitute an "instruction," we read the specification as maintaining a distinction between "instructions" and "data." An instruction "may . . . *include* data," not *consist of* data; the instruction is not the data itself. As the district court observed, "[i]f 'data' is a type of 'instructions,' then the phrase 'instructions and/or data' would not make sense." *Interval*, 2013 WL 792791, at

*16. Moreover, the district court's reading is consistent with extrinsic evidence suggesting that the distinction between "instructions" and "data" is widely recognized in the field of art. *See* J.A. 845 ("The distinction between program (instructions) and data is a fundamental one in computing." (quoting *Oxford Dictionary of Computing*)). For these reasons, we decline Interval's invitation to call into question the distinction between "instructions" and "data" in the district court's construction.

As for Interval's concerns regarding the "in a programming language" phrase, we find that a modification to the construction is necessary. Although the district court carefully explained why the intrinsic evidence supported the exclusion of the word "data" from its construction, the court offered no direct explanation for its inclusion of the "in a programming language" limitation. The patents' specification does not indicate that instructions must take the form of programming language statements. The source of that limitation is the *IEEE Standard Dictionary of Electrical and Electronics Terms* (6th ed. 1996) ("IEEE Dictionary"), which the Defendants relied on for their proposed construction. *See* J.A. 419, 484.

The IEEE Dictionary includes five different definitions of "computer instruction," with two definitions specifically directed towards "software" computer instructions. The Defendants based their construction on one of those two definitions: "A statement in a programming language, specifying an operation to be performed by a computer and the addresses or values of the associated operands; for example, Move A to B." *Id.* at 484. The second definition, which the Defendants did not reference, reads: "Loosely, any executable statement in a computer program." *Id.*

We have recognized that technical dictionaries "can assist the court in determining the meaning of particular

terminology to those of skill in the art of the invention." *Phillips*, 415 F.3d at 1318. At the same time, we have cautioned against relying on dictionary definitions at the expense of a fair reading of the claims, which must be understood in light of the specification. *See id.* at 1321–22. Here, considering that the patents' specification does not use "instructions" in relation to "programming language statements," we find that the broader dictionary definition ("any executable statement in a computer program") is preferable.

Moreover, we share Interval's concern that the "in a programming language" limitation will breed unnecessary uncertainty about whether "instructions" may take the form of object code. As Interval notes, one could argue that object code—which may consist of strings of 1's and 0's—is not a "programming language." The IEEE Dictionary, however, defines "object code" as "*[c]omputer instructions* and data definitions in a form output by an assembler or a compiler."

In sum, the extrinsic source on which the district court relied suggests a broader construction of "instructions" than the court adopted. We conclude that a construction without the "in a programming language" phrase is both simpler and more accurate. Accordingly, we adopt the following construction: "a statement that specifies a function to be performed by a system."

## CONCLUSION

We hold that the claim phrase "in an unobtrusive manner that does not distract a user" is indefinite under 35 U.S.C. § 112, ¶ 2. Therefore, the district court correctly granted judgments of invalidity as to claims 4–8, 11, 34, and 35 of the '652 patent and claims 1–4 and 7–15 of the '314 patent. However, the district court erred in granting judgments of non-infringement as to claims 15–18 of the '652 patent based on the erroneous claim construction of "attention manager." We therefore affirm the

26                    INTERVAL LICENSING LLC v. AOL, INC.

judgments of invalidity, vacate the judgments of non-infringement, and remand to the district court for further proceedings consistent with this opinion.

### AFFIRMED–IN–PART, VACATED–IN–PART, AND REMANDED

#### Costs

Each party shall bear its own costs.